IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGEL LUIS CALO DIAZ, | : | |
|     Petitioner | : | |
| | : | No. 1:23-cv-00777 |
| v. | : | |
| | : | (Judge Kane) |
| WARDEN BARRAZA, | : | |
|     Respondent | : | |

## MEMORANDUM

Pending before the Court is Petitioner Angel Luis Calo Diaz ("Petitioner")'s petition for a writ of habeas corpus filed pursuant to the provisions of 28 U.S.C. § 2241 ("Section 2241"). (Doc. No. 1.) He seeks an order directing the Federal Bureau of Prisons ("BOP") to award him earned time credits, as required under the First Step Act ("FSA") of 2018. (Id.) For the reasons set forth below, the petition will be denied.

### I.  BACKGROUND

Petitioner is currently serving a sixty-three (63) month term of imprisonment imposed by the United States District Court for the Western District of New York for a conviction of conspiracy to possess with intent to distribute cocaine. (Doc. No. 7-1 at 1, ¶ 3.) He entered the custody of the BOP on December 22, 2022 (id. at 4), and his projected release date, via good conduct time, is March 26, 2026 (id. at 1, ¶ 3).

On May 11, 2023, while Petitioner was incarcerated at Federal Correctional Institution Allenwood Medium in White Deer, Pennsylvania, he commenced the above-captioned action by filing his Section 2241 petition (Doc. No. 1) and subsequently paying the requisite filing fee (Doc. No. 4). Petitioner contends that the BOP has unlawfully denied him earned time credits under the FSA. (Doc. No. 1.) In support, he asserts the following grounds: that he has a "medium" recidivism risk level in the "[g]eneral score" and a "low" recidivism risk level in the

"[v]iolent score[;]" he has made a good faith effort to lower his recidivism risk level, but there are "no more programs" in which he can participate in order to do so; and the warden can authorize his earned time credits to be applied to his federal sentence, regardless of his recidivism risk level, but Respondent has unlawfully removed that authority from the warden.[1] (Id. at 8.)  As for relief, Petitioner requests that the Court order the BOP to apply his FSA earned time credits to his federal sentence.  (Id.)

On June 8, 2023, the Court, inter alia, deemed the petition filed, directed service of the petition on Respondent, and instructed Respondent to file a response to the allegations contained in the petition within twenty (20) days.  (Doc. No. 5.)  On June 27, 2023, Respondent filed a response, arguing that the Court should dismiss the petition because Petitioner failed to exhaust his administrative remedies and because, alternatively, his petition is without merit since the BOP properly determined that he is not eligible to have his earned time credits applied to his federal sentence.  (Doc. No. 7.)  As reflected by the Court's docket, Petitioner has not filed a reply, and the time period for doing so has passed.  Thus, the petition is ripe for the Court's resolution.

II.     **DISCUSSION**

   A.     **Exhaustion**

While there is no statutory exhaustion requirement for habeas corpus petitions brought pursuant to the provisions of Section 2241, the United States Court of Appeals for the Third Circuit has recognized that "[f]ederal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to [Section]

---

[1] Respondent is the warden of Federal Correctional Institution Allenwood Medium.  (Doc. No. 1 at 1.)  Thus, the Court presumes that Petitioner is more generally referring to the institution.

2241." See Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996) (citations omitted); Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000). Exhaustion is required because: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." See Moscato, 98 F.3d at 761–62 (citations omitted); Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981).

However, exhaustion of administrative remedies is not required where these underlying reasons for exhaustion would not be served. See id. (citations omitted); Coleman v. U.S. Parole Comm'n, 644 F. App'x 159, 162 (3d Cir. 2016) (unpublished). "For example, exhaustion may be excused where it 'would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm.'" See Brown v. Warden Canaan USP, 763 F. App'x 296, 297 (3d Cir. 2019) (unpublished) (quoting Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988)).

In order to exhaust administrative remedies, a federal inmate must comply with the procedural requirements of the BOP's administrative remedy process, which are set forth in the Code of Federal Regulations. See generally 28 C.F.R. §§ 542.10–542.19. Under these regulations, an inmate shall first attempt informal resolution of his complaint with staff and, if the inmate is unable to resolve his complaint informally, he shall submit a formal, written request on the proper form to the designated staff member. See id. §§ 542.13–542.14. If the inmate is not satisfied with the Warden's response, the inmate shall then submit an appeal to the Regional Director, using the appropriate form. See id. § 542.15(a). And, finally, if the inmate is not

satisfied with the Regional Director's response, then the inmate shall submit an appeal to the Office of the General Counsel, located in the BOP Central Office, using the appropriate form. See id. An inmate is not deemed to have exhausted his administrative remedies until his complaint has been pursued at all levels. See id. (explaining that an "[a]ppeal to the General Counsel is the final administrative appeal").

Here, the record reflects that Petitioner has not filed any administrative remedies while in the custody of the BOP. See (Doc. No. 7-1 at 2, ¶ 5; id. at 6 (containing the "Administrative Remedy Generalized Retrieval" report for Petitioner)).[2] Thus, because the record reflects that Petitioner has not filed any administrative remedies, there is no basis upon which the Court could conclude that he properly or fully exhausted his remedies in accordance with the BOP's administrative remedy process.

Moreover, Petitioner appears to concede that he did not exhaust his administrative remedies before filing his petition in this Court and, instead, argues that he is asserting "a question of interpretation of law that only the court can resolve[.]" (Doc. No. 1 at 2.) The Court agrees with Respondent, however, that Petitioner has not demonstrated that he should be excused from exhausting his administrative remedies. (Doc. No. 7 at 6–7.) In particular, the Court finds that Petitioner has not alleged any facts from which the conclusion could be drawn that requiring him to resort to his administrative remedies would be futile, that the BOP has clearly and

---

[2] "The BOP maintains a database known as the SENTRY Inmate Management System ('SENTRY')." See Torres v. Spaulding, No. 3:22-cv-01701, 2022 WL 17477084, at *2 (M.D. Pa. Dec. 6, 2022). During "the ordinary course of business, computerized indexes of all formal administrative remedies filed by [BOP] inmates are maintained by the Institution, Regional, and Central Offices." See id. SENTRY, in turn, "generates a report titled 'Administrative Remedy Generalized Retrieval[,]' which allows codes to be entered to identify the reason or reasons for rejecting a request for administrative relief." See id.

unequivocally violated his statutory or constitutional rights,[3] or that the BOP's administrative remedy procedure is inadequate to prevent irreparable harm to him.

In addition, because Petitioner contends that the BOP should be ordered to apply his earned time credits to his federal sentence, the Court finds that he must first present this request to BOP officials so that they can determine whether he is eligible for such credits under the FSA and, if so, how many credits he has earned.  See Moscato, 98 F.3d at 761–62 (explaining that exhaustion is required because, among other things, it provides "agencies the opportunity to correct their own errors[,]" thereby fostering "administrative autonomy" (citations omitted)); Bradshaw, 682 F.2d at 1052 (explaining that the Third Circuit has "adhered to the exhaustion doctrine for several reasons[,]" including "administrative autonomy[, which] requires that an agency be given an opportunity to correct its own errors" (citations and internal quotation marks omitted)).

Thus, for all of these reasons, the Court concludes that Petitioner's Section 2241 petition is subject to dismissal for failure to exhaust his administrative remedies.  See Laguerra v. Spaulding, No. 21-cv-01116, 2022 WL 68390, at *2 (M.D. Pa. Jan. 6, 2022) (concluding that the Section 2241 petitioner had failed to exhaust his claim seeking an award of federal time credits under the FSA because he had presented no facts that the BOP violated statutory or constitutional rights or that exhausting his administrative remedies would subject him to irreparable injury).  Even assuming arguendo, however, that Petitioner exhausted his administrative remedies, he is not entitled to relief on the merits.

---

[3] As discussed below, Respondent argues, and persuasively, that Petitioner is ineligible for earned time credits under the FSA because he has a high recidivism risk level.  (Doc. No. 7 at 7–10.)

**B.     The Merits**

Under the FSA, an eligible inmate "who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits" which "shall be applied toward time in prerelease custody or supervised release." See 18 U.S.C. § 3632(d)(4)(A), (C).  More specifically, the FSA allows eligible inmates to earn ten (10) days of time credits for every thirty (30) days of successful participation in evidence-based recidivism reduction ("EBRR") programming or productive activities ("PAs").  See id. § 3632(d)(4)(A)(i).  Additionally, if the BOP determines that the inmate is at a minimum or low risk of recidivism and has not increased his or her risk of recidivism over two (2) consecutive assessments, then the inmate shall earn an additional five (5) days of time credit for every thirty (30) days of successful participation in EBRR programming or PAs.  See id. § 3632(d)(4)(A)(ii).

In addition, under Section 3624(g) of the FSA, placement in prerelease custody requires that the inmate has been determined "to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner[.]" See id. § 3624(g)(1)(D)(i).  Similarly, under Section 3624(g) of the FSA, an early transfer to supervised release requires that the inmate has been determined "to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner." See id. § 3624(g)(1)(D)(ii).  In other words, in both of these situations—i.e., placement in prelease custody or early transfer to supervised release—application of earned time credits under the FSA cannot occur until the inmate has been determined to be a minimum or low recidivism risk.  See id. § 3624(g)(1)(D)(i)–(ii).

If the inmate is unable to satisfy this requirement concerning his recidivism risk level, then he may petition the warden of the prison to be individually considered for placement in prelease custody or supervised release.  See 18 U.S.C. § 3624(g)(1)(D)(i)(II).  The warden, in

turn, can approve the inmate's "petition to be transferred to prerelease custody or supervised release" upon concluding that: (1) the inmate "would not be a danger to society if transferred to prerelease custody or supervised release;" (2) the inmate "has made a good faith effort to lower [his] recidivism risk through participation in recidivism reduction programs or productive activities;" and (3) the inmate "is unlikely to recidivate[.]" See id. § 3624(g)(1)(D)(i)(II)(aa)–(cc); see also 28 C.F.R. § 523.44(c)(2)(i)–(iii).

Here, the record suggests that Petitioner has earned FSA time credits. (Doc. No. 7-1 at 2, ¶ 8; id. at 7.) The record further reflects, however, that such credits cannot be applied toward time in prerelease custody or supervised release because Petitioner has a high recidivism risk level. (Id. at 7 (revealing that Petitioner was assessed with a high recidivism risk level on December 22, 2022, and again on January 19, 2023)); see also Navarro v. Barraza, No. 3:23-cv-00514, 2023 WL 3483235, at *3 (M.D. Pa. May 16, 2023) (stating that "[i]nmates who are eligible for FSA time credits can accrue credits, but they cannot be applied until the inmate has earned a low or minimum recidivism risk" (citation omitted)). Accordingly, as explicitly prescribed by Congress, Petitioner will not be eligible for application of earned time credits until, inter alia, his recidivism risk level is reduced to minimum or low.

Finally, to the extent that Petitioner contends that Respondent has unlawfully removed the warden's authority to individually approve application of earned time credits for inmates who have high or medium recidivism risk levels (Doc. No. 1 at 8), the Court finds that Petitioner's argument is unavailing. While, as discussed above, Section 3624(g) of the FSA authorizes the warden (i.e., Respondent) to deem such inmates eligible for application of earned time credits, Petitioner has neither alleged, nor shown, that he petitioned the warden for this specific approval or that the warden approved his petition. See 18 U.S.C. § 3624(g)(1)(D)(i)(II)(aa)–(cc)

(explaining that the warden of the prison can approve an inmate's "petition to be transferred to prerelease custody or supervised release" after the warden has determined that: (1) the inmate "would not be a danger to society if transferred to prerelease custody or supervised release;" (2) the inmate "has made a good faith effort to lower [his] recidivism risk through participation in recidivism reduction programs or productive activities;" and (3) the inmate "is unlikely to recidivate").  Accordingly, Petitioner's Section 2241 petition will be denied.

### III. CONCLUSION

For all of the foregoing reasons, the Court will deny the instant habeas corpus petition. An appropriate Order follows.

s/ Yvette Kane<br>
Yvette Kane, District Judge<br>
United States District Court<br>
Middle District of Pennsylvania